IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MATTHEW BLOOM, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**NEXTERA ENERGY, INC., et al.,**<br><br>**Defendants.** | Case No. 5:21-cv-04058-HLT-ADM |

## MEMORANDUM AND ORDER

This case arises out of the construction of wind turbines in Kansas. Plaintiffs Matthew and Rachel Bloom and Casey and Sharon Bloom assert a nuisance claim against Defendant Soldier Creek. Other claims and defendants have been dismissed. Plaintiffs have twice sought to amend the complaint to add some of the dismissed defendants—NextEra Energy Resources ("NEER") and NextEra Energy Project Management ("NEPM")—back into the case. Both motions were denied by the magistrate judge. Plaintiffs now seek review of the second of those orders. Doc. 149. The Court employs de novo review and concludes that: (1) Plaintiffs fail to show good cause under Rule 16 for amending the complaint five months after the deadline for doing so and (2) the proposed amendment is both untimely and futile under Rule 15. The objection is overruled. Leave to amend is denied.

### I. BACKGROUND

#### A. Pleading History and Motions to Dismiss

This case is related to two others pending in the District of Kansas: *Renne v. NextEra Energy, Inc. et al*, Case No. 5:21-cv-04032-HLT-ADM (D. Kan.), and *Stallbaumer v. NextEra*

*Energy Resources, LLC et al*, Case No. 5:22-cv-04031-HLT-ADM (D. Kan.).[1] This case and *Renne* have generally proceeded together, though none of the cases are formally consolidated. *Stallbaumer* involves the same issues but was filed later than the others. The magistrate judge recently issued identical amended scheduling orders in all three cases to align the deadlines.

Plaintiffs initially filed a complaint in August 2021. Doc. 1. After Defendants moved to dismiss, Plaintiffs filed an amended complaint. Doc. 25. The Court denied the motions to dismiss as moot. In response to the amended complaint, Defendants again moved to dismiss. In response, Plaintiffs sought leave to file a second amended complaint, which was granted, and which again mooted the pending motions to dismiss. Doc. 37.

After Plaintiffs filed the second amended complaint, Doc. 40, Defendants again moved to dismiss. The Court subsequently granted in part and denied in part the motions on July 25, 2022. Doc. 63. Relevant here, the Court dismissed all the so-called NextEra Defendants because they are not the owner and operator of the wind turbine project. *Id.* at 23.[2] The only surviving claim was a nuisance claim, and the only remaining defendant was Soldier Creek, who both parties acknowledge owns and operates the project. *Id.* at 12, 23. In dismissing the NextEra Defendants, the Court stated it "struggled somewhat to discern precisely the grounds on which Plaintiffs believe they can hold [the NextEra] Defendants liable for the conduct about which they complain, especially given that it is undisputed that only Soldier Creek owns and operates the project." *Id.* at 12. Although the NextEra Defendants have a parent-subsidiary relationship with Soldier Creek, they still have a separate corporate existence. *Id.* There were no allegations they are alter egos or that piercing the corporate veil is necessary. *Id.* at 12-13. Although Plaintiffs argued they were

---

[1] Cites to docket entries in this case will be to "Doc. __." Any cites to docket entries in the other cases will be designated with the respective case name.

[2] Two NextEra Defendants were also not subject to personal jurisdiction. Doc. 63 at 23.

alleging joint and several liability, or a joint venture or common enterprise, the Court found that there were no facts alleged to support those legal conclusions. *Id.* at 13-14. Finally, to the extent Plaintiffs alleged the NextEra Defendants are directly liable based on their involvement in the development and construction of the wind farm, Plaintiffs failed "explain how their involvement at some point in the construction of the wind turbines renders them directly liable for nuisance under Kansas law." *Id.* at 16. Accordingly, the Court dismissed the claims against the NextEra Defendants, including NEER and NEPM. *Id.* at 17. The Court also dismissed claims by Casey and Sharon Bloom because there were no facts alleged about how the wind turbines interfered with the use and enjoyment of their property. *Id.* at 19.

### B.     First Contested Motion to Amend

About a month later, Plaintiffs filed a motion for leave to file a third amended complaint, seeking to add back in claims by Casey and Sharon Bloom, as well as the dismissed nuisance claims against NEER and NEPM. Doc. 67. Specifically, Plaintiffs sought to correct collective pleading issues, reference some new evidence that those involved in the wind project were NEPM employees, and explain that Soldier Creek is the "junior partner of sorts in this enterprise" while NEER and NEPM are the leaders. *Id.* at 3-7. Plaintiffs wished to address the Court's ruling on the motion to dismiss that only Soldier Creek owns and operates the project by alleging that NEER owns Soldier Creek and that NEER and NEPM "were very active in Kansas on the Project even apparently more so than Soldier Creek Wind LLC and, at least, jointly involved in critical matters relevant to the claims." *Id.* at 7. According to Plaintiffs, NEER and NEPM are "the primary actors and jointly liable for the harm to Plaintiffs." *Id.* at 8.

3

The magistrate judge denied leave to amend on grounds of futility and undue delay as to the claims against NEER and NEPM. Doc. 75.[3] On the issue of futility, she concluded that the proposed third amended complaint suffered the same failings as existed in the *Renne* case, and she found that leave to amend should be denied for the reasons stated in that order. *Id.* at 2. In the *Renne* order, the magistrate judge found that the proposed amendment did not address the Court's questions about how NEER and NEPM could be liable for nuisance for a project it does not own, even considering the allegations that NEER and NEPM employees were involved in the development of the project. *See Renne*, Doc. 67. at 6-8. The magistrate judge also found undue delay in seeking leave to amend. Specifically, all the information relied on in seeking amendment had long been known. *Id.* at 9-11. No explanation for the delay was given. *Id.* at 10. In the *Renne* order, the magistrate judge further noted:

> [T]his case has been bogged down for nearly 18 months with an ongoing cycle of pleading, motions to dismiss, repleading, more motions to dismiss, and now yet another futile attempt to replead. At this point, the scope of the case has been properly refined to the surviving nuisance claim against Soldier Creek, and it is time for the parties to move forward with discovery on that claim without further delay. The court recognizes the possibility that Renne may seek leave to amend if he learns additional information in discovery. But, at least at this procedural juncture, it is clear to the court that the proposed third amended complaint is not legally justified and that allowing it would undermine the "just, speedy, and inexpensive determination" of this action.

*Id.* at 11-12 (citing Fed. R. Civ. P. 1).

The case proceeded to discovery. The December 2022 scheduling order set a discovery deadline of May 12, 2023, and a deadline for motions to amend of February 2, 2023. Doc. 81 at 2. The parties sought to modify the scheduling order at least three times, primarily for expert related

---

[3] Leave to amend to add back in claims by Casey and Sharon Bloom was denied without prejudice. Doc. 75 at 2-3. Plaintiffs subsequently moved again regarding those claims, Doc. 76, and that motion was granted as unopposed, Doc. 77. The third amended complaint with those claims was filed December 2, 2022. Doc. 78.

4

discovery issues. Docs. 95, 98, 106. The magistrate judge has extended several deadlines. But the February 2 deadline for motions to amend passed without any motions, and the deadline was not extended.

### C. Second Contested Motion to Amend

On July 3, 2023, Plaintiffs filed another motion to amend the complaint. Doc. 112. Plaintiffs again sought to re-add NEER and NEPM to the case. They argued that new evidence suggested "both NEER and NEPM are both the current owner and operator of the Project itself and partially and jointly, if not primarily, liable for causing the nuisance central to Plaintiffs' claims." *Id.* at 1. Plaintiffs acknowledged that the "motion is being filed after the date in the Scheduling Order for amending" but they contended that "the definitive nature of the new evidence is compelling and should be allowed adjudication on the merits." *Id.* at 2 n.2. This new evidence was that NEER and NEPM had recently withdrawn certain arguments in the *Stallbaumer* case, that a NEER employee had made relevant statements at a county commissioners' meeting, and that some emails received in discovery justified amendment. *Id.* at 9-12. Plaintiffs contended that this new evidence was sufficient to render NEER and NEPM potentially directly liable for nuisance, though they did not cite any authority on this point. *See id.* at 15.

The magistrate judge denied the motion based on untimeliness and futility. Doc. 134 at 3. She noted that because the scheduling-order deadline for pleading amendments had passed, Plaintiffs were required to satisfy the requirements of both Rule 16 and Rule 15. *Id.* at 3-4. As to Rule 16, the magistrate judge noted that Plaintiffs did not address Rule 16 in the motion or explain the delay in moving to amend, let alone show good cause. *Id.* at 4. She noted that Plaintiffs had two months to conduct discovery before the February 2 deadline passed, and yet they still waited until July 3—five months after the deadline—to file the motion. *Id.* at 4. Even to the extent

5

Plaintiffs were motivated to seek amendment in light of statements made at an April 2023 Jackson County commissioners' meeting, Plaintiffs still waited two and a half months to seek leave to amend. *Id.* Based on this, the magistrate judge found Plaintiffs had not demonstrated diligent efforts to meet the scheduling-order deadline and thus had not satisfied Rule 16's good-cause standard. *Id.*

The magistrate judge also found Plaintiffs had not satisfied Rule 15. *Id.* at 5. First, the request to amend was unduly delayed for the same reasons Plaintiffs had not act diligently under Rule 16. *Id.* The magistrate judge also found amendment would be futile. *Id.* She found the proposed amended pleading did not plausibly allege that NEER or NEPM are the owner and operators of the project, nor had they demonstrated a basis for joint and several liability, the existence of a joint venture or common enterprise, or any grounds to hold NEER and NEPM directly liable for nuisance. *Id.* at 6. The magistrate judge found that the NEER employee's statements at the commissioners' meeting did not establish that NEER owns the project because they did not directly address the project. *Id.* Nor was she persuaded NEER and NEPM had conceded in the *Stallbaumer* case that they own and operate the project. *Id.* at 6-7. The withdrawn arguments related instead to personal jurisdiction. *Id.*

In sum, the magistrate judge found Plaintiffs just repeated arguments previously rejected and failed to explain how they could hold NEER and NPM liable for an alleged nuisance they don't own or operate. *Id.* at 7. The proposed amendment was therefore futile. *Id.*

Plaintiffs now move for review of the magistrate judge's order denying the second contested motion to amend. Doc. 149.[4]

---

[4] Plaintiffs in *Renne*, *Bloom*, and *Stallbaumer* are all represented by the same counsel, and all have filed similar motions for review.

**II.      STANDARD**

There is some disagreement between the parties about whether the underlying ruling on the motion to amend in this case was dispositive or non-dispositive. *See* Doc. 149 at 3 ("The standard of review in this objection is not simple or easy to determine."); Doc. 165 at 2 (discussing that different standards may be appropriate depending on the reasoning for the ruling). Whether a ruling is dispositive determines the standard applied when a district judge reviews a magistrate judge's decision. *See* Fed. R. Civ. P. 72. Typically, a magistrate judge's ruling on a motion to amend is considered non-dispositive. But it may be considered dispositive where it has the effect of removing a claim. *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000). Denying leave to amend on futility grounds is often considered dispositive. *Id.*

Here, the magistrate judge denied leave to amend for failure to meet Rule 16's good-cause standard, undue delay, and futility. Given the futility ruling, and particularly given that the issues raised in the instant motion have been repeatedly raised in this case, the undersigned will construe the underlying ruling as dispositive, and will employ de novo review.[5]

Rule 72(b) allows a party to file objections to dispositive rulings, and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In a de novo review, the Court makes an independent determination of the issues. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). "The district judge is free to follow a magistrate's recommendation or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Id.* (internal brackets, quotation, and citation omitted).

---

[5]   Review of non-dispositive rulings uses a clearly erroneous or contrary to law standard. *See* Fed. R. Civ. P 72(a). Given that this is generally a more deferential standard than de novo review, the Court notes that it would reach the same decision under either standard.

**III.     ANALYSIS**

Plaintiffs rely primarily on three points to argue that they should be permitted to amend the complaint again and re-assert the nuisance claims against NEER and NEPM. First, they argue that ESI discovery shows that NEER and NEPM representatives were extensively, and perhaps solely, responsible for the development, placement, and construction of the windmills about which Plaintiffs complain. Doc. 149 at 5. Second, they argue that statements made by a NEER representative at a county commissioners' meeting in April 2023 suggest that NEER does consider itself as the owner of all its projects in Kansas. *Id.* at 6. Third, Plaintiffs argue that the withdrawal of certain arguments in *Stallbaumer* should be construed as a concession that NEER and NEPM do own the project in question. *Id.* at 6-7. These arguments are relevant under both the Rule 16 and Rule 15 analysis.

**A.     Rule 16**

The Tenth Circuit has held that "parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). This requires a showing that the deadline could not have been met despite diligent efforts. *Id.* at 1240. This may be shown by pointing to newly discovered evidence. *Id.* If a plaintiff fails to meet the Rule 16 standard, a court is within its discretion to deny leave to amend. *See id.* at 1241.

Here, the scheduling order set a February 2, 2023 deadline for motions to amend. Doc. 81 at 2. Plaintiffs filed their motion on July 3, 2023. Accordingly, Plaintiffs must show good cause for seeking leave to amend the pleadings after the scheduling order deadline.

8

The magistrate judge noted that Plaintiffs failed to satisfy or even address Rule 16's good-cause standard. Doc. 134 at 3-4.[6] In the motion for review, Plaintiffs attempt to demonstrate diligence with regard to the February 2 deadline. Doc. 149 at 9. But it is not now proper for Plaintiffs to try to establish compliance with the Rule 16 standard when they failed to make that argument before the magistrate judge. *See Reyes v. Larimer Cnty.*, 796 F. App'x 497, 499 (10th Cir. 2019) ("In any event, arguments and claims raised for the first time in an objection to a magistrate judge's report and recommendation are waived."); *Columbian Fin. Corp. v. Stork*, 2016 WL 3769552, at *2 (D. Kan. 2016) ("Similarly, the purpose of the Magistrate Judge's Act would be frustrated if there was not a rule that '[i]ssues raised for the first time in objection to the magistrate judge's recommendation are deemed waived.'" (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996))). The Court denies leave to amend because Plaintiffs fail to meet their burden under Rule 16.

Even considering Plaintiffs' argument that they acted diligently, the Court is not persuaded. Plaintiffs claim they could not comply with the scheduling order deadline for amending pleadings because of the timing of Defendant's ESI production. Doc. 149 at 10-12. Plaintiffs' motion states that Defendant began producing documents in February 2023 and completed production on May 31, 2023. *Id.* at 10.[7] But Plaintiffs apparently did not begin reviewing documents until June. *See id.* at 10-11; *see also* Doc. 149-6 at 1-2. While this may have been Plaintiffs' prerogative and a cost-saving measure, this delay does not show good cause, especially where Plaintiffs claim to have learned additional relevant information on this subject in April 2023 at the commissioners'

---

[6] The underlying motion included a footnote that stated: "This motion is being filed after the date in the Scheduling Order for amending but the definitive nature of the new evidence is compelling and should be allowed adjudication on the merits." Doc. 112 at 2 n.2. This is insufficient to meet the good-cause standard of Rule 16.

[7] During this time, there were at least three motions to amend the scheduling order. Docs. 95, 98, 106. None of those appear to have sought any extension related to motions to amend the pleadings. If Plaintiffs were concerned with the pace of ESI production, they never acted to preserve the deadline to amend pleadings.

meeting. Additionally, Plaintiffs' attorney, who is attorney of record in each of the three cases, submitted a declaration with the motion for review stating that he and co-counsel discussed whether to seek leave to amend in April 2023 when they sought leave to file a surreply in the related *Stallbaumer* case. Doc. 149-6 at 3. In that proposed surreply, Plaintiffs sought to demonstrate NEER and NEPM's involvement in Kansas and with the project. But the declaration states that Plaintiffs' counsel instead opted to wait until after they reviewed all the ESI, the review of which at that point would not have even started yet. *See id*. And even if Plaintiffs would've been justified in seeking leave to amend in April or early May,[8] they waited until early July. The Court thus finds Plaintiffs have not satisfied the good-cause standard under Rule 16 for amendments after the scheduling order deadline. The Court denies the motion for this reason alone.

### B.     Rule 15

Although the Court denies the motion for failure to meet Rule 16's good-cause standard, it will consider whether leave to amend would be proper under Rule 15. Rule 15(a)(2) states that successive amendments to pleadings may be made "only with the opposing party's written consent or the court's leave," and a "court should freely give leave when justice so requires." Whether to grant leave to amend is discretionary. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Factors considered are undue delay, bad faith, failure to cure deficiencies in previous amendments, undue prejudice to the opposing party, and futility of amendment. *See id.*

---

[8]   Plaintiffs also suggest that the withdrawal of certain arguments regarding personal jurisdiction in the *Stallbaumer* case in response to the motion to file a surreply was a significant development. That occurred on May 4, 2023. *Stallbaumer*, Doc. 39. Plaintiffs still waited two months before seeking leave to amend.

### 1. Undue Delay

For the same reason that the Court found Plaintiffs failed to exercise diligent efforts under Rule 16, the Court finds Plaintiffs unduly delayed under Rule 15. *See id.* at 1206 (stating that delay is "undue" where there is no adequate explanation for the delay).

### 2. Futility

The Court may also deny leave to amend based on futility. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Panicker v. State Dep't of Agric.*, 498 F. App'x 755, 757 (10th Cir. 2012) (internal quotation and citation omitted).

In the motion for review, Plaintiffs argue that the newly discovered evidence makes the proposed amendment not futile. The ostensible new evidence relied on by Plaintiffs is: (1) emails showing the involvement of NEER and NEPM in the development and construction of the project, Doc. 149 at 5; (2) statements by a NEER representative at the April 2023 commissioners' meeting "concerning how NEER views its control and ownership over all of its subsidiaries' projects in Kansas," *id.* at 6; and (3) the withdrawal of certain arguments by NEER and NEPM in the *Stallbaumer* case, *id.* at 7. Plaintiffs argue this evidence shows that Soldier Creek did not have any employees during the "critical periods relevant to the complaint[]" and that all of the work was directed and performed by NEER and NEPM employees. *Id.* at 3. According to Plaintiffs, the newly discovered evidence "now proves . . . that NEER and NEPM are responsible for undertaking all conceivable actions that resulted in these nuisances being created and located near Plaintiffs' properties and are partially and/or jointly liable for it." *Id.*; *see also id.* at 5 ("Newly discovered evidence proves that both NEER and NEPM employees undertook that conduct prior to the Project becoming operational and bear partial and/or joint liability, as Plaintiffs have alleged from the beginning.").

As discussed above, the Court previously dismissed NEER and NEPM because the only surviving claim was a nuisance claim, and it was undisputed that Soldier Creek is the sole owner and operator of the wind farm, i.e. the alleged nuisance. *See* Doc. 63 at 11-17. Plaintiffs had not identified any valid basis to hold NEER and NEPM liable for nuisance under those circumstances. *Id*. Although joint and several liability was alleged initially, it was only via an unsupported legal conclusion in the complaint. *Id.* at 13. Although Plaintiffs alleged NEER, NEPM, and Soldier Creek formed a joint venture or common enterprise, no facts were alleged regarding the existence of either. *Id*. And although Plaintiffs contended NEER and NEPM are directly liable for nuisance because they were involved in developing and constructing the project, the Court found Plaintiffs had failed to explain how NEER or NEPM's "involvement at some point in the construction of the wind turbines renders them directly liable for nuisance under Kansas law." *Id.* at 16.

After considering each category of new evidence, the Court finds that none of the evidence cited by Plaintiffs would change this analysis.

      **a.**  **ESI**

Plaintiffs first point to emails that they say show NEER and NEPM's involvement in the project. The Court has reviewed the emails attached to the proposed amended complaint. *See* Doc. 130 at 4. Plaintiffs say these emails show that NEER employees were heavily involved "over actions like tower placement, construction, and foreknowledge of setback non-compliance at the center of the claims in this case." *Id*. But NEER and NEPM's involvement in the project has been alleged from the beginning. It is not a new allegation. The problem has been Plaintiffs' failure to explain <u>how</u> that involvement makes NEER or NEPM liable for nuisance, which is the only claim left, where it has been acknowledged by both sides that Soldier Creek is the owner and operator of the project. Perhaps there is a legal theory that would make a nuisance claim against a non-

owner of an alleged nuisance viable. But despite the Court's repeated questioning on this point, Plaintiffs have not identified or supported what that theory is.

The Court finds itself back at the same impasse.[9] Plaintiffs state that the new evidence cited shows that NEER and NEPM "are partially and/or jointly liable" for the project. Doc. 149 at 3. But, again, this is a legal conclusion without any supporting authority. The Court understands Plaintiffs' emphatic position to be that NEER and NEPM had a significant hand in building the wind farm. But they do not own it now, and Plaintiffs have yet to explain how NEER and NEPM are liable for an alleged nuisance they do not own or operate.

### b.     Statements at Commissioners' Meeting

Plaintiffs also rely on statements by a NEER representative at a county commissioners' meeting in April 2023. The Court has reviewed those statements. The first exchange was discussing NEER or NEPM representatives going onto property without authorization and damaging fields, and whether they would take responsibility for that. Doc. 130 at 5-6. That's not at issue here. The NEER representative also explained that the projects are built and then held by a separate entity. *Id.* at 6. That is precisely what occurred here with Soldier Creek. The NEER representative, speaking somewhat generally, then says he doesn't think there is "inability to pierce the corporate veil." *Id.* Even to the extent this statement could be read to encompass all NextEra projects in Kansas, including the Soldier Creek project, it is not a reasonable inference to conclude that the separate entity of Soldier Creek can or should be disregarded in this case. Nor can it be reasonably construed as a concession by NEER and NEPM that they can be sued for nuisance with

---

[9] Independent of the reasons cited throughout this order, denial of leave to amend would therefore also be appropriate because Plaintiffs have failed to cure deficiencies identified by the Court. *See Minter*, 451 F.3d at 1204.

regard to the project owned and operated by Soldier Creek. Whether and to what extent a party can pierce a corporate veil is a legal issue, and Plaintiffs offer no analysis on that point.

Plaintiffs also contend that statements later made at the meeting that NEER oversees projects in Kansas means conclusively that NEER in actuality owns the project, and that NEPM and Soldier Creek are alter egos of NEER. The Court disagrees that these statements go that far. Whether an entity is an alter ego of another is a legal conclusion. The statements of a NEER employee at a commissioner's meeting apparently convened to discuss a separate project does not establish that NEPM and Soldier Creek are alter egos of NEER in this case as to this project. And as discussed above, the involvement of NEER and NEPM and the fact that Soldier Creek is the entity created to own and operate the project has been alleged since the start of this case. The testimony at the commissioners' meeting, however, does not address the questions that have been raised by the Court in the ruling on the motions to dismiss. *See* Doc. 63 at 11-17.

### c.   Withdrawal of Arguments in *Stallbaumer*

The final piece of evidence Plaintiffs rely on to argue amendment is not futile is NEER and NEPM's withdrawal of certain arguments in *Stallbaumer*. Plaintiffs construe that withdrawal as a concession of sorts by NEER and NEPM that they are in fact owners and operators of the wind farm. *See* Doc. 112 at 3 ("In abruptly abandoning nearly two years worth of repeated assurances and emphatic arguments to this Court, NEER or NEPM abandoned oft repeated and heavily relied upon false assertions that they did not 'own or operate' the Project . . . .").

The Court disagrees that NEER and NEPM made any such concession. The withdrawn arguments related to personal jurisdiction. *See Stallbaumer*, Doc. 40 at 9 n.6. NEER and NEPM explicitly did not withdraw any arguments under Rule 12(b)(6), including their argument that they

could not be liable for nuisance because they are not the owner and operator of the property. *Stallbaumer*, Doc. 39 at 2. Plaintiffs' argument on this point does not overcome futility.

## IV.     CONCLUSION

The Court concludes that leave to amend should be denied for failure to comply with Rule 16. Leave to amend is alternatively denied for failure to comply with Rule 15, particularly as to undue delay and futility.

THE COURT THEREFORE ORDERS that Plaintiffs' Objection or Appeal of the Magistrate Judge's Order (Doc. 149) is OVERRULED. The Motion to Amend (Doc. 112) is DENIED.

IT IS SO ORDERED.

Dated: September 25, 2023              /s/ Holly L. Teeter
                                       HOLLY L. TEETER
                                       UNITED STATES DISTRICT JUDGE

15